1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT BRUCE MCKAY-ERSKINE,

                         Petitioner,

        v.

JEFFREY UTTECHT,

                         Respondent.

CASE NO. 3:18-cv-05024-BHS-TLF

**REPORT AND RECOMMENDATION**

Noted for: October 19, 2018

Petitioner Robert Bruce McKay-Erskine was convicted by jury verdict of three counts of rape of a child in the first degree and two counts of child molestation in the first degree. Dkt. 12, Respondent's Submission of Relevant State Court Record, Exhibit 1. In his 28 U.S.C. § 2254 petition, McKay-Erskine contends that the trial court violated his right to effective counsel under the Fifth, Sixth, and Fourteenth Amendments. Dkt. 8, Petition for Writ of Habeas Corpus, at 6; and Exhibit 11, Personal Restraint Petition, at 4-35.

The undersigned recommends that the Court deny the petition as to all claims of ineffective assistance of counsel.

REPORT AND RECOMMENDATION -
1

# I. STATEMENT OF FACTS

The Washington Court of Appeals, Division II, summarized the facts underlying McKay-Erskine's conviction as follows:

*Background*

In the mid-1990s, McKay and Pyxey Erskine-McKay (Erskine) were members of a group of itinerant youths known as the Ave Rats, who congregated on and around University Way in Seattle's University District. Over the following two decades, many members of the Ave Rats moved away, but they remained a fairly close-knit group and often lived communally. The Ave Rats also engaged in communal sexual relationships, and McKay and Erskine each had several children of varying parentage. AB was Erskine's child with a father other than McKay.

Around 2009, McKay and Erskine entered into a committed relationship and began to cohabitate and raise their children together. At the time, AB was three or four years old. In 2011, McKay and Erskine married and moved with their children into a friend's house in Puyallup and later into a house in Tacoma. McKay took on a parenting and caretaking role for his and Erskine's children, including AB.

In early 2012, Camber Edwards, a friend of both McKay and Erskine, moved in with them. In May 2012, McKay and Edwards began a sexual relationship. Hostility arose when Erskine found out about the affair, and McKay and Edwards soon left the house.

*Sexual Abuse of AB*

Later in 2012, AB told two family friends living with them in Tacoma that McKay had abused her. The friends told Erskine, who asked them to take AB to school so she could report what happened. AB reported the abuse to the school counselor, and the next day to a Child Protective Services (CPS) social worker. CPS reported the abuse to the police, and AB subsequently repeated her story to an investigator and a medical examiner.

According to AB's testimony, McKay began to sexually abuse her while the family was living in Puyallup and continued during their time in Tacoma. McKay forced AB to engage in oral and vaginal intercourse multiple times while other members of the family were away. AB was six or seven years old at the time.

The State charged McKay with two counts of first degree child molestation and three counts of first degree child rape. The State also alleged aggravating circumstances for all five counts due to McKay's alleged abuse of his position of trust as her stepfather and caretaker.

*McKay's Statements Regarding Sex and Children*

REPORT AND RECOMMENDATION - 2

1

2          The State moved before trial to introduce statements McKay had made to
      friends several years earlier indicating a sexual interest in young children and a
3     belief that sexual relationships between a father and a young daughter were
      appropriate. The trial court granted the State's motion and ruled that it would
4     allow testimony on the statements. To support the ruling, the trial court
      specifically found that (1) by a preponderance of the evidence, McKay had made
5     the statements at issue; (2) the statements were relevant to show McKay's motive
      and intent in committing the crimes; and (3) the probative value of the statements
6     outweighed their prejudicial potential.
          At trial, one friend testified that in 2005 McKay said "he believed that the
7     thought of putting his penis in a child's mouth without any teeth sounded
      enticing." Report of Proceedings (RP) (Oct. 14, 2013) at 9. The friend also
8     testified that McKay "told me that he enjoyed the feeling of a child's mouth on
      his penis." RP (Oct. 14, 2013) at 14-15. In addition, that friend testified that
9     McKay told her during the same conversation, and at various other times, that "[a]
      girl's first sexual experience should be with her father because no one can love
10    them as much as their father." RP (Oct. 14, 2013) at 10. Another friend also
      testified that McKay had made similar statements to her that a girl should have
11    her first sexual experience with her father.

12    *Erskine's Statement to Edwards*

13         At trial, McKay's attorney stated that he intended to ask Edwards,
      McKay's girlfriend, about a statement Erskine made to Edwards at some point
14    after the fall of 2012. Edwards apparently was prepared to testify that Erskine had
      said something like "once I am done with [McKay], I am going to come after
15    you." RP (Oct. 14, 2013) at 44. The State moved to exclude any such testimony
      on hearsay grounds. McKay argued that the evidence was admissible as evidence
16    of Erskine's mental state at the time, but the trial court ruled that the evidence was
      inadmissible hearsay.

17    *McKay's Convictions and Sentence*

18         The jury found McKay guilty of each charged count and found that he had
      abused his position of trust with AB to commit those crimes. The trial court
19    sentenced McKay to 318 months to life in prison and imposed community
      custody for the remainder of his life should he be released from confinement. . . .

20    Exhibit 3, Unpublished Opinion, *State v. McKay-Erskine*, Washington State Court of Appeals,

21    Division II, No. 45587-1-II, at 2-4.

22

23

REPORT AND RECOMMENDATION -
3

On appeal, the Washington Court of Appeals affirmed the convictions, though it remanded for the trial court to modify certain community-custody conditions. Exhibit 3; Exhibit 4-7 (appellate briefs and Statement of Additional Grounds for Review).

McKay-Erskine sought review by the Washington Supreme Court. Exhibit 8. The Washington Supreme Court denied review on January 6, 2016. Exhibit 9. The Washington Court of Appeals issued its mandate on January 20, 2016. Exhibit 10.

McKay-Erskine then filed a personal restraint petition (PRP) in the Washington Court of Appeals. Exhibits 11-13. The Washington Court of Appeals denied the PRP. Exhibit 14, Unpublished Opinion, No. 49832-4-II. The Commissioner of the Washington Supreme Court denied Mr. McKay-Erskine's motion for discretionary review on December 19, 2017. Exhibit 15; Dkt. 20-1, Exhibit 16.

McKay-Erskine filed a petition for writ of habeas corpus on January 22, 2018. Dkt. 8.

## II.    STANDARD OF REVIEW

A federal court may grant a habeas corpus petition with respect to a claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing

principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

This is a "'highly deferential standard'" that "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). If "'fairminded jurists could disagree' on the correctness of the state court's decision," this Court cannot grant habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). In short, "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson*, 360 F.3d at 1055.

### III. EXHAUSTION

Exhaustion of state court remedies is a prerequisite to granting a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). To waive exhaustion, the respondent must do so

REPORT AND RECOMMENDATION - 5

explicitly. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion may not be implied or inferred. A petition satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985).

Here, the State acknowledged that "McKay-Erskine appears to have properly exhausted his state court remedies by fairly presenting his one claim to the Washington Supreme Court as a federal claim." Dkt. 11, p. 5. In response to an Order to Show Cause regarding exhaustion, Dkt. 19, the State explicitly waives the exhaustion issue by stating: "Petitioner properly exhausted his state court remedies by fairly presenting his single habeas corpus claim, alleging ineffective assistance of counsel, to the Washington Supreme Court as a federal claim." Dkt. 20. The state-court record supports this, as McKay-Erskine presented his ineffective assistance of counsel claim to the Washington State Court of Appeals and the Washington Supreme Court. *See* Exhibits 11, 15; Dkt. 20-1, Exhibit 16 (McKay-Erskine Motion for Discretionary review in Washington Supreme Court). Accordingly, McKay-Erskine satisfied the exhaustion requirement and the Court should review the merits of the claim.

## IV. DISCUSSION

### A.  Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). To show that this right was denied, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the first of these prongs, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

REPORT AND RECOMMENDATION - 6

Courts apply a "strong presumption" that the performance of counsel "falls within the wide range of reasonable professional assistance." *Id.* at 689. Counsel has "wide latitude in deciding how best to represent a criminal defendant" and "in making tactical decisions." *Id.* at 688-89. Courts evaluate "[t]he reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986).

Under the second prong, the defendant must "affirmatively prove prejudice" in the form of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. In weighing prejudice, a reviewing court "must consider the totality of the evidence before the judge or jury." *Id.* at 695.

The primary question when reviewing a claim of ineffective assistance of counsel under the Antiterrorism and Effective Death Penalty Act (AEDPA) is not whether counsel's representation was deficient or the state court erred in its analysis, but whether the state court adjudication *itself* was unreasonable. *Yarborough*, 540 U.S. at 5. Review of counsel's representation is thus "doubly deferential when it is conducted through the lens of federal habeas." *Id.* at 5-6.

**B. Last Reasoned State Court Decision**

The Washington State Court of Appeals, Division II, issued the last reasoned state court decision on McKay-Erskine's ineffective assistance claim. Exhibit 14. In denying McKay-Erskine's personal restraint petition, the court held:

> While McKay-Erskine's counsel cancelled a December 2012 bail hearing, he set a bail hearing for March 22, 2013. McKay-Erskine does not show deficient performance in postponing the bail hearing. McKay-Erskine fails to show that his counsel did not keep him adequately informed. His counsel met with him a number of times and provided him with the State's discovery two weeks before

1    trial. McKay-Erskine fails to show that expert medical testimony would have been
     relevant in his trial. There were no incriminating medical findings in the State's
2    case. McKay-Erskine does not show that his counsel's cross-examination of the
     State's witness was deficient. The evidence of past drug use by some of the
3    witnesses was not admissible as impeachment evidence. And his counsel elicited
     testimony establishing possible bias of one of the State's witnesses, LaVergne.
4    [VRP at 12-13.] McKay-Erskine does not show that his counsel's decision not to
     call all of the witnesses on his witness list was deficient performance. Finally, he
5    does not show that his counsel prohibited him from testifying in his own defense;
     his counsel properly advised him of the dangers of testifying in his own defense.
6    Thus, McKay-Erskine does not demonstrate deficient performance by his trial
     counsel. And even if he had, he does not show a reasonable probability the result
7    of his trial would have been different had that deficient performance not occurred.
     McKay-Erskine fails to demonstrate ineffective assistance of counsel.

8    Exhibit 14, p. 2. McKay-Erskine raises the same grounds in his habeas corpus petition.

9    **C.  Analysis**

10   Bail-Hearing Continuance

11          First, McKay-Erskine contends that his trial counsel made an "arbitrary decision to

12   cancel Mr. McKay-Erskine's bail hearings" and that this act was "manifestly prejudicial." Dkt.

13   15, p. 9. He cites generally to the federal Bail Reform Act, 18 U.S.C. § 3142(b), (c), and to

14   federal decisions explaining that bail should be the presumption for most defendants. Dkt. 15, pp.

15   8-9; *see also* Exhibit 11, pp. 9-10 (PRP arguments).

16          Although McKay-Erskine asserts that his counsel canceled both of his bail hearings, the

17   state court did not find this to be the case: "While McKay-Erskine's counsel cancelled a

18   December 2012 bail hearing, he set a bail hearing for March 22, 2013." Exhibit 14, p. 2. The

19   court concluded that "McKay-Erskine does not show deficient performance in *postponing* the

20   bail hearing." *Id.* (emphasis added). McKay-Erskine fails to show by clear and convincing

21   evidence that the state court was incorrect that that his second hearing was merely postponed, or

22   that this was an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

23

REPORT AND RECOMMENDATION -
8

1    Even accepting McKay-Erskine's assertion that his counsel canceled the second hearing

2   set for March 22, 2013, McKay-Erskine cites no authority, and the undersigned is aware of none,

3   for the proposition that cancellation of bail hearings can amount to constitutionally deficient

4   performance by trial counsel. *See Kelly v. Springett*, 527 F.2d 1090, 1093 (9th Cir. 1975)

5   (holding that defendant has no absolute Constitutional right to bail other than due-process right

6   to be free from arbitrary decisions); *cf. Young v. Hubbard*, 673 F.2d 132, 134 (5th Cir. 1982)

7   (noting that "federal court does not sit in appellate review of a state court's exercise of judicial

8   discretion in its grant or denial of bail"). Accordingly, McKay-Erskine cannot show that the state

9   court's conclusion that his counsel was not deficient was contrary to or an unreasonable

10   application of Supreme Court law.

11    Further, McKay-Erskine does not explain how denial of bail contributed to his current

12   custody in state prison. This Court applies the test from *Brecht v. Abrahamson* to determine

13   whether a state court error was harmless. That test asks whether the reviewing Court has "grave

14   doubt" as to whether the error had "'substantial and injurious effect or influence in determining

15   the jury's verdict.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2015) (quoting *O'Neal v.*

16   *McAninch*, 513 U.S. 432, 436 (1995)); *see Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993).

17   McKay-Erskine points out that a defendant is generally better able to aid in his case when he is

18   out on bail rather than in custody. Dkt. 15, pp. 8-9; *see Stack v. Boyle*, 342 U.S. 1, 4 (1951)

19   ("This traditional right to freedom before conviction permits the unhampered preparation of a

20   defense, and serves to prevent the infliction of punishment prior to conviction."). But this general

21   principle—and McKay-Erskine's speculation that he would have had a more effective defense if

22   he was not in custody before trial—is not enough to create "grave doubt" as to any impact on the

23

REPORT AND RECOMMENDATION - 9

jury verdict. *See Davis*, 135 S.Ct. at 2197-98. Thus, McKay-Erskine has not made the showing of prejudice required for habeas relief. *Davis*, 135 S.Ct. at 2197-98.

Keeping Client Informed

Next, McKay-Erskine contends that his trial counsel's performance was constitutionally deficient due to an alleged failure to keep him adequately informed about the progress of his case. The state court held: "McKay-Erskine fails to show that his counsel did not keep him adequately informed. His counsel met with him a number of times and provided him with the State's discovery two weeks before trial." Exhibit 14, p. 2.

The record indicates that the state court's finding was reasonable. McKay-Erskine's own attachments to his PRP demonstrate that counsel met with him several times before trial and showed him the State's evidence. *See* Exhibit 11, Att. B, pp. 000082-000084 (LaTourette notes, March 2013). McKay-Erskine does not show that this was an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Nor does he show by clear and convincing evidence that the state court was incorrect. 28 U.S.C. § 2254(e)(1). McKay-Erskine's conclusory allegation does not rebut the presumption that counsel was not deficient. Nor does it show prejudice from the alleged deficiency: McKay-Erskine's speculation about his ability to contribute to his defense is not enough to show that any deficiency contributed to the jury verdict. *See Davis*, 135 S.Ct. at 2197-98. Accordingly, this ground must fail as well.

Expert Testimony

McKay-Erskine contends that his counsel's failure to present expert testimony in his defense was deficient performance. The state court held: "McKay-Erskine fails to show that expert medical testimony would have been relevant in his trial. There were no incriminating medical findings in the State's case." Exhibit 14, p. 2.

REPORT AND RECOMMENDATION - 10

1    McKay-Erskine has not shown that this holding was contrary to or an unreasonable

2    application of Supreme Court law. Although McKay-Erskine contends that expert testimony was

3    necessary to rebut expert testimony for the State, the state court reasonably rejected this

4    argument. *See* Dkt. 15, p. 12; Exhibit 14, p. 2. The sole expert to testify for the State was Cheryl

5    Hanna-Truscott, a nurse practitioner who performed a sexual-assault evaluation on the victim.

6    Dkt. 12, Appendix E, Attachment A, pp. 473-98. Ms. Hanna-Truscott testified both on direct and

7    cross-examination that the victim's sexual-assault exam was normal. *Id.* at 496-98.

8    McKay-Erskine cites *Gersten v. Senkowski*, for the principle that "failure to consult with

9    or call a medical expert is often indicative of ineffective assistance of counsel" in sexual abuse

10   cases. 426 F.3d 588, 607 (2d Cir. 2005). First, a decision from the Second Circuit does not

11   demonstrate that this principle is "clearly established . . . as determined by the Supreme Court of

12   the United States." *See* 28 U.S.C. § 2254(d)(1). The Ninth Circuit has cited *Gersten* only once,

13   and the Supreme Court reversed that decision. *See Richter v. Hickman*, 578 F.3d 944, 961 (9th

14   Cir. 2009), *rev'd and remanded sub nom. Harrington v. Richter*, 562 U.S. 86 (2011).

15   Second, even assuming that *Gersten* reflects the law as interpreted by the Supreme Court,

16   the decision would not benefit McKay-Erskine. Unlike in *Gersten*, the record here does not show

17   that the State introduced medical evidence of abuse, and therefore there was no prosecution

18   evidence for a defense expert to rebut. *See* 426 F.3d at 609 (finding that defense counsel

19   "essentially conceded that the physical evidence was indicative of sexual penetration without

20   conducting any investigation to determine whether this was the case"). Moreover, unlike the

21   petitioner in *Gersten*, McKay-Erskine does not proffer any expert evidence that would show he

22   could have presented favorable medical testimony at trial, as the petitioner did in *Gersten*. *See id.*

23

REPORT AND RECOMMENDATION -
11

1   at 612. Accordingly, McKay-Erskine's ineffective assistance claim on this ground fails at both

2   the deficient performance and prejudice prongs.

3   <u>Cross-Examining State Witnesses</u>

4          The next ground in McKay-Erskine's petition is that his trial counsel performed

5   deficiently in cross-examining the State's witnesses. The state court held: "McKay-Erskine does

6   not show that his counsel's cross-examination of the State's witness was deficient. The evidence

7   of past drug use by some of the witnesses was not admissible as impeachment evidence. And his

8   counsel elicited testimony establishing possible bias of one of the State's witnesses, LaVergne.

9   [VRP at 12-13.]." Exhibit 14, p. 2.

10          Beyond his conclusory assertion in the petition, McKay-Erskine does not show that his

11   counsel's performance in cross-examining prosecution witnesses was deficient under this Court's

12   "doubly deferential" review of trial counsel's representation. *Yarborough v. Gentry*, 540 U.S. 1,

13   4-5 (2003); *see* Dkt. 12, Appendix E, Attachment A, pp. 12-13 (trial counsel cross-examined

14   witness about prior inconsistent statements), 497-98 (trial counsel confirmed in cross-

15   examination of nurse that sexual-assault exam showed "no sign of injury"). Thus, the state

16   court's rejection of this ground of McKay-Erskine's claim was not contrary to or an

17   unreasonable application of clearly established federal law.

18   <u>Petitioner's Right to Testify</u>

19          Finally, McKay-Erskine contends that his counsel was deficient in refusing to prepare

20   him to testify and not permitting him to testify.

21          A criminal defendant has a right under the Due Process Clause of the Fourteenth

22   Amendment and the Compulsory Process Clause of the Sixth Amendment, and as a necessary

23   corollary to the Self-Incrimination Clause of the Fifth Amendment, to testify in his or her own

REPORT AND RECOMMENDATION -
12

1    defense. *Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987). The Sixth Amendment "grants to the

2    accused personally the right to make his defense." *Faretta v. California,* 422 U.S. 806, 819

3    (1975). The United States Court of Appeals for the Ninth Circuit applies the performance and

4    prejudice standard of *Strickland v. Washington,* when a petitioner alleges deprivation of the right

5    to testify based on counsel's allegedly erroneous advice. *Matylinsky v. Budge,* 577 F.3d 1083,

6    1097 (9th Cir. 2009).

7            The Supreme Court recently reaffirmed that whereas "[t]rial management is the lawyer's

8    province," assisting the client "by making decisions such as 'what arguments to pursue, what

9    evidentiary objections to raise, and what agreements to conclude regarding the admission of

10   evidence,'" certain decisions "are reserved for the client—notably, whether to plead guilty,

11   waive the right to a jury trial, *testify in one's own behalf*, and forgo an appeal. *McCoy v.*

12   *Louisiana*, 138 S.Ct. 1500, 1508 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 248

13   (2008)) (emphasis added).

14           Mr. McKay-Erskine alleged in his personal restraint petition at the Washington Court of

15   Appeals that Mr. DeCosta

16           openly refused to comply with Mr. McKay-Erskine's wish to testify on his own
             behalf. Mr. DeCosta flatly refused to help Mr. McKay-Erskine to prepare to take
17           the stand and in so doing actually prevented him from being able to testify at trial.
             Mr. DeCosta's claims of not knowing if his client would testify or not were made
18           falsely, 10/10/13 RP 501 (8-10), he know Mr. McKay-Erskine wanted to tell his
             side of the events, as indicated in Mr. LaTourette's attached notes. When Mr.
19           McKay-Erskine found out that the only witness Mr. DeCosta would call would be
             his girlfriend, Ms. Edwards, Mr. McKay-Erskine again asserted to Mr. DeCosta
20           that he wanted to testify, 10/14/13 RP 72 (18-21). Mr. DeCosta refused and the
             defense rested.
21
     Exhibit 11, pp. 28-29.
22

23

REPORT AND RECOMMENDATION -
13

1    It does not appear that the state courts conducted a hearing on this issue. The Washington

2    State Court of Appeals dismissed Mr. McKay-Erskine's personal restraint petition as frivolous

3    and concluded that McKay-Erskine "does not show that his counsel prohibited him from

4    testifying in his own defense; his counsel properly advised him of the dangers of testifying in his

5    own defense." Exhibit 14, p. 2. The Court of Appeals added that "even if" McKay-Erskine had

6    shown deficient performance by counsel, "he does not show a reasonable probability the result of

7    his trial would have been different had that deficient performance not occurred." *Id.*

8    McKay-Erskine's habeas corpus petition alleges that his trial counsel "refused to prepare

9    defendant to testify on his own behalf; refused to allow defendant to testify at trial . . ." Dkt. 8,

10   Petition for Writ Habeas Corpus, at 5. As the Supreme Court recently reiterated, the decision to

11   testify in one's own behalf is reserved to the client. *McCoy*, 138 S. Ct. at 1508.

12   But the record before this Court contains little evidence regarding discussions between

13   McKay-Erskine and trial counsel about McKay-Erskine testifying. The notes from defense

14   investigator LaTourette reflect a conversation between Mr. McKay-Erskine and his attorney, Mr.

15   DeCosta, where Mr. DeCosta explained the reasons why he did not want his client to testify. The

16   defense investigator's notes show the following:

17       9/10/13 Meeting with client [McKay-Erskine] and Mr. DeCosta [McKay-
         Erskine's trial counsel]
18       . . .
         Mr. DeCosta addressed more trial concerns with client including that he didn't
19       want client to testify due to the risk of opening the door to damaging information.
         Mr. DeCosta went over more trial ground rules with client including behavior,
20       juror contact, etc. and talked about trial duration and trial clothing. Client gave
         clothing sizes for DAC clothing if needed. Client said, 'I have to fight an uphill
21       battle against a stacked deck.' and said he wanted to work with Mr. DeCosta."
         Exhibit 11, Att. B, p. 000084.
22
     Exhibit 11, Att. B, pp. 000082-000084 (LaTourette notes, March 2013).
23

REPORT AND RECOMMENDATION -
14

1    The record does not contain any evidence that McKay-Erskine told his attorney he had

2    decided to testify and his attorney refused to allow him to do so. The portion of the transcript

3    McKay-Erskine cited in his PRP appeal does not indicate that McKay-Erskine's counsel

4    prevented him from testifying. *See* Exhibit 12, 10/14/13 RP at 72.

5    Moreover, McKay-Erskine has not shown that the Court of Appeals made an

6    unreasonable determination in concluding that he did not show a reasonable probability that the

7    result of his trial would have been different without the alleged refusal to let him testify. *See*

8    Exhibit 14, p. 2; *Yarborough*, 540 U.S. at 5 (habeas court must determine if state court's denial

9    of ineffective-assistance claim was *itself* unreasonable). Accordingly, habeas relief is not

10    warranted for the fourth ground of McKay-Erskine's ineffective-assistance claim.

11    **V. CONCLUSION**

12    Based on the foregoing, the Court recommends that McKay-Erskine's habeas petition be

13    denied as to all four claims of ineffective assistance of counsel.

14    Pursuant to 28 U.S.C. § 636(b)(1) and FRCP 72(b), the parties shall have fourteen (14)

15    days from service of this Report and Recommendation to file written objections. See also FRCP

16    6. Failure to file objections will result in a waiver of those objections for purposes of appeal.

17    *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the

18    Clerk is directed to set the matter for consideration on **October 19, 2018**, as noted in the caption.

19    Dated this 1st day of October, 2018.

20

21

22

23

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION -
15